(85 South. 845)

UNDERWOOD v. DUSKIN & STEWART REALTY CO. (3 Div. 360.)

(Court of Appeals of Alabama. June 1, 1920. Rehearing Denied June 29, 1920.)

1. EVIDENCE ⬤⟿461(1)—QUITCLAIM DEED ADMISSIBLE AS SHOWING CONSTRUCTION PUT UPON CONTRACT OF SALE.

In an action by a broker to recover commissions for furnishing a purchaser, a quitclaim deed, from the alleged purchaser to the seller, was admissible as going to show what construction the defendant put upon a contract of purchase and sale entered into, and that it was considered as a binding contract.

2. BROKERS ⬤⟿60—ENTITLED TO COMPENSATION ON FURNISHING PURCHASER REGARDLESS OF CONTRACT ENTERED INTO.

A broker, having procured purchaser ready, willing, and able to purchase the property upon

---

⬤⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

terms satisfactory to the owner, was entitled to be paid the agreed commission, and where a purchaser was procured and a contract of purchase and sale executed and accepted, a broker's duty was ended, and he was entitled to compensation, whether the owner ever enforced the contract or whether he afterwards agreed to rescind.

3. APPEAL AND ERROR ☞1047(1)—ERRORS AS TO EVIDENCE IMMATERIAL, WHERE PLAINTIFF ENTITLED TO GENERAL CHARGE.

Erroneous rulings of the court on evidence were immaterial, where, upon the undisputed evidence in the case, and considering everything offered to be proved by defendant, plaintiff was entitled to the general affirmative charge.

Appeal from Circuit Court, Montgomery County; Leon McCord, Judge.

Action by the Duskin & Stewart Realty Company against Kenneth Underwood, for commission on the sale of real estate. Judgment for plaintiff, and defendant appeals. Affirmed.

Evidence tended to show that the defendant placed 160 acres of land with the plaintiff for sale at $40 per acre, agreeing to pay 5 per cent. of the purchase price as commission. The plaintiff sold the land to Dr. Galt, upon a consideration of $4,000 cash, and the balance arranged on certain payments. Dr. Galt was ready to trade, but found the land could not be delivered, as it was rented, and Mr. Underwood attempted to buy the tenant's lease, but could not do so, whereupon the parties entered into the following written agreement:

State of Alabama, Montgomery County.

Agreement between Kenneth Underwood and Lucy C. Underwood, his wife, parties of the first part, and F. H. Galt, party of the second part, witnesseth: For the consideration hereinafter mentioned the first party have this day sold to the second party, his heirs and assigns, the following land: [Here follows description of land]—and upon payment of said first parties, hereinafter agreed to be made on January 1, 1919, they agree to execute and deliver to said party of the second part, his heirs and assigns, a deed, with full covenants of warranty, conveying said property to him free from all incumbrances.

For said property the party of the second part has this day paid to the parties of the first part five hundred ($500.00) dollars, the receipt of which is hereby acknowledged, and agrees to pay thirty-five hundred ($3,500.00) dollars on or before January 1, 1919, eight hundred ($800.00) dollars on or before January 1, 1920, eight hundred ($800.00) dollars on or before January 1, 1921, and eight hundred ($800.00) dollars on or before January 1, 1922. All of said deferred payments shall bear interest at the rate of six (6%) per cent. per annum from January 1, 1919.

The parties of the first part agree to furnish to the second party within five days a complete abstract of title to said lands, certified by the State Abstract Company of Montgomery, Alabama, for the purpose of having the titles thereto examined by the attorney for the party of the second part. Said attorney shall pass upon said title within ten days after receipt thereof and if approved by him, this agreement shall be carried into effect. Should said titles be found defective, the parties of the first part shall have thirty (30) days to remedy said defects to the satisfaction of the attorney for the party of the second part and if the same are not corrected, then this agreement shall be terminated and the parties of the first part shall immediately refund to the party of the second part the five hundred ($500.00) dollars paid by him at this time. And then said contract shall stand annulled.

If said title is approved by the attorney for the party of the second part, then parties of the first part will execute and deliver said warranty deed to the party of the second part on January 1, 1919, upon the payment to them of said sum of thirty-five hundred ($3,500.00) dollars, and said parties of the first part shall pay all taxes on said property to the date of the delivery of said deed. Possession of said property shall be given to the party of the second part not later than January 1, 1919, and if possession is not delivered on or before said date, the second party shall have the right to terminate this contract and to be repaid said cash payment. It is understood that the parties of the first part may retain possession of said lands until and including December 31, 1918, and be entitled to all incomes from said lands to said date. All taxes on said lands for the time after January 1, 1919, shall be paid by the party of the second part. For the repayment of said sum in event this contract is not carried into effect, a lien is hereby fixed upon said lands in favor of the party of the second part.

In witness whereof, said parties have executed this agreement in duplicate, this March 19, 1919.

      Kenneth Underwood. [Seal.]
      Lucie C. Underwood. [Seal.]
      F. H. Gault. [Seal.]

Witness: J. E. Duskin, Jr.

Walton H. Hill, of Montgomery, for appellant.

The evidence was in conflict and the court erred in directing a verdict for the plaintiff. 124 Ala. 427, 26 South. 898, 82 Am. St. Rep. 186; 123 Ala. 641, 26 South. 510; 122 Ala. 565, 26. South. 120; 121 Ala. 471, 25 South. 733. The contract to sell was erroneously construed by the court as a sale. 37 Kan. 677, 15 Pac. 918; 17 R. I. 582, 23 Atl. 1019, 33 Am. St. Rep. 897; 105 Md. 135, 66 Atl. 13, 8 L. R. A. (N. S.) 824, 11 Ann. Cas. 783. Under the facts in this case, the sale was never consummated, and the vendor was not at fault; hence no commissions are recoverable. 60 Cal. 555; 36 N. J. Law, 333; 101 Mass. 257, 3 Am. Rep. 352, and authorities next above.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Ball & Beckwith, of Montgomery, for appellee.

The following authorities support the action of the court in giving the affirmative charge for the plaintiff, and hence, if there was error in any other ruling of the court, it could not affect the result: 86 Ala. 149, 5 South. 473; 86 Ala. 151, 5 South. 157; 141 Ala. 551, 37 South. 738; 177 Ala. 636, 59 South. 286; 180 Ala. 541, 61 South. 68; 188 Ala. 237, 66 South. 452; 26 Okl. 19, 108 Pac. 395, 27 L. R. A. (N. S.) 1089, Ann. Cas. 1912A. 1265; 79 South. 154; 81 South. 567; 195 Ala. 203, 70 South. 637; 196 Ala. 417, 72 South. 89; 19 Cyc. 271.

SAMFORD, J. The defendant was the owner of 160 acres of land, which he desired to sell, and for this purpose employed plaintiff to procure a purchaser, agreeing to pay for the service 5 per cent. of the purchase price. The plaintiff did procure a purchaser at a satisfactory price, to wit, $6,400, and after some negotiations as to terms and time of delivery of possession defendant and the purchaser entered into an agreement, dated March 19, 1918, which will be set out by the reporter.

[1] This contract was accepted by both parties, and the consideration named was paid. The commission agreed upon between plaintiff and defendant was demanded, but never paid, the defendant claiming that the contract of sale had never been consummated. On March 31, 1919, the purchaser executed and delivered to defendant, and defendant accepted, a quitclaim deed to the property, which quitclaim deed recognized the binding force and effect of the original contract of sale, and recited that the defendant and purchasers had mutually agreed to rescind the contract of sale, and that defendant should retain the $500 cash payment. This quitclaim deed was admissible as going to show what construction the defendant put upon the contract of purchase and sale. McGowin Lumber & Export Co. v. Camp Lumber Co., 16 Ala. App. 283, 77 South. 433.

[2] The plaintiff having procured a purchaser ready, willing, and able to purchase defendant's property, upon terms satisfactory to defendant, was entitled to be paid the agreed commissions. Kellar v. Jones & Weeden, 196 Ala. 417, 72 South. 89. When the contract of purchase and sale had been executed and accepted, the duty of plaintiff was ended. Whether defendant ever enforced it, or whether he afterwards agreed to rescind it, as in this case he did do, was of no consequence to plaintiff; plaintiff was not a party to it, and had no control over it. Whatever was necessary to guarantee performance was a matter of contract between the parties, and was determined by the terms of the writing by which the entire matter was taken out of the hands of plaintiff. Under the terms of the purchase and sale contract, the defendant "sold" the lands therein described to the purchaser, and, as a margin to secure the balance of the purchase money, $500 in cash was paid, and an agreement in writing to pay the balance at a fixed time. The defendant recognized this, when on a mutual rescission he required a quitclaim deed reconveying the title. These were the negotiations of defendant, of which he assumed the responsibility, and apparently were satisfactory to him, with a purchaser furnished by plaintiff. He cannot avail himself of the services of the plaintiff, employed by him, who procured a purchaser, and then avoid the payment of the commission because the contract of sale made by himself does not terminate as he desires. Smith v. Sharpe, 162 Ala. 438, 50 South. 381, 136 Am. St. Rep. 52.

[3] Admitting that some of the rulings of the court on the evidence may have been error, which we do not decide, upon the undisputed evidence in this case, and considering everything offered to be proved by defendant, plaintiff was entitled to the general affirmative charge, and such rulings could not affect the result.

The court committed no error in giving the general charge as requested in writing by plaintiff, and the judgment is affirmed.

Affirmed.