## SWEARINGEN V. STANLEY.

1. **Slander:** PLEADING: EXTRINSIC FACTS: DEFAMATORY MATTER: It is not necessary under our statute (Rev. 1860, § 2928) to allege, in an action of slander, any extrinsic facts showing the application of the defamatory matter to the plaintiff. It is enough to allege that it was spoken of and concerning him.

2. —— DEFAMATORY SENSE. Nor is it necessary to state extrinsic facts showing that the words charged were used in a defamatory sense; but it is sufficient to allege generally that they were thus used.

3. —— WORDS ACTIONABLE PER SE: PLEADING. Where words actionable *per se* are charged, it is not necessary to allege or prove facts showing special damages; and the further averment of damages to plaintiff in his different relations of a citizen, a farmer and church member, does not vary the rule, nor justify the action of the court in requiring a more specific statement of particular items of damage sustained in each capacity.

*Appeal from Marshall District Court.*

WEDNESDAY, JULY 31.

ACTION for slander. The petition contains three counts. The defendant demurred to each count, and also filed a motion for a more specific statement in, and to require the plaintiff to separate and divide the third count. The court sustained the demurrer as to the first and second counts, overruled it as to the third, and sustained the motion for a more specific statement. The plaintiff excepted, stood by his pleading and now appeals.

*Boardman & Brown* for the appellant, filed a written argument from which the following points are extracted. Appellee's argument not found on file.

1. Slander of an individual, in his business, is not limited to artisans, officers, or other class of men. It may be predicated of a farmer, in a particular transaction,

supporting his family from several farms, and gaining a profit by selling his surplus products regularly as a business. For example: A drover buying and selling cattle. *Lewis* v. *Hawley*, 2 Day, 495. A farmer selling products of his farm. *Phillips* v. *Harper*, 1 Burr, 62, 68. Fraudulent dealing in his business. *Thomas* v. *Jackson*, 3 Bing. 104; *Bryant* v. *Layton*, 11 Moore, 344. Want of integrity in a lawyer in a *particular transaction. Gaw* v. *Selden*, 6 Barb. 416. Also see 1 Hilliard on Torts, 333, 314.; 30 N. Y. 20.

2. That the words used in this case are actionable in themselves, there can be no doubt. A crime is pointedly imputed "with or without the alleged meaning;" and no averment of special damage is required. Calling a person a "knave" is actionable. 1 Hilliard on T. 296 (note); *Harding* v. *Brooks*, 5 Pick. 244. Declaring the plaintiff a rogue and a swindling rascal are actionable without special damage. 1 Hilliard on Torts, 330. If some of the words are actionable *per se*, and others not, the defendant is precluded from demurring. 2 Hill, 309; 20 Wend. 190. In a late English case, a general allegation of loss of business is sufficient averment of special damage. *Evans* v. *Harris*, 38 Eng. L. and Eq. 347. This plaintiff alleges damage in his business at the close of the third count. The words "*your man is plotting to blow me up, and I believe you have a hand in it,*" in connection with colloquium and innuendo, are actionable without averment of special damage. 1 Hilliard on Torts, 331.; *Ware* v. *Clourney*, 24 Ala. 707. So to say "*he is a cheat,*" with colloquium. 12 Mod. 420. To impute to a workman and trader dishonesty in a *particular transaction* in asphalate, aided by innuendo, is actionable. 1 Hilliard on Torts (note), 333; *Barbonneau* v. *Farrell*, 28 Eng. L. and Eq. 339. If it is insinuated that the trader was guilty of *malpractice* or *deceit* in selling his goods,

the words are actionable *per se. Jackson* v. *Russell,* 4 Wend. 537, 543; 1 Am. Lead. Cas. 126.

3. Words charged to be slanderous are to be construed most strongly against the speaker. If capable of a slanderous signification, or if by a particular emphasis of the voice, or expression of the face, any person might be led to *suspect* the plaintiff of a *crime,* or incapacity and *dishonesty* in his business, then the words must go to the jury. The words must be taken as they are averred to have been understood, unless such interpretation was an impossibility. "The Mitiori sense" doctrine is exploded. 2 Greenl. on Ev. §§ 411, 417; Rev. § 2928; *Blagg* v. *Sturt,* 10 Ad. & El. 899; 6 Cow. 76; 2 G. Greene, 315; *Barton* v. *Holmes,* 16 Iowa, 252. Witnesses may testify how they understood the words. 16 Iowa, *supra;* 2 Starkie on Slan. 51; *Wilson* v. *Beighler,* 4 Iowa, 427; *Truman et ux.* v. *Taylor et ux.,* Id. 424. "Words may be actionable though they contain no direct and positive assertion, but made the charge by ambiguous language or by insinuation." 1 Hilld. on Torts, 261; 7 Barb. 260. The intention is a question for the jury. 1 Hilld. on Torts, 263. An indirect charge of crime is sufficient, if calculated to induce the hearers to *suspect* the plaintiff guilty of the crime. 1 Hilld. on Torts, 280; 5 Blackf. 453; 7 Wend. 439; *True* v. *Plumley,* 36 Maine, 466; *Maybee* v. *Fisk,* 42 Barb. 326. But our statute is conclusive in section 2928, in this language, to-wit: "And where the words or matter set forth, with or without the alleged meaning, show a cause of action, it shall be sufficient." In *Gorham* v. *Ives,* 2 Wend. 534, it was held that the words, "*Do you think it is G.'s handwriting?*" would sustain a count for forgery.

4. It has always been held a sufficient colloquium to aver that the words were spoken of the plaintiff in relation to his business, having first stated he was carry-

Swearingen v. Stanley.

ing on such business. This is the extreme ; but in many cases no colloquium was deemed necessary, etc. As for instance, where the words themselves indicated the business, and that they were spoken of the plaintiff in that relation. 1 Am. Lead. Cas. 124; *Burtch* v. *Nickerson*, 17 Johns. 217; 3 Comstock, 178; 10 Ired. 211; 16 Sergeant & Rawle, 385; *Hoyle* v. *Young*, 1 Wash. 150 ; 1 Am. Lead. Cas. 157, 158. In the case at bar, the plaintiff has alleged all that could be required in an extreme case. What is a sufficient colloquium is discussed and decided in *Sturtevant* v. *Root*, 7 Fost. (N. H.) 69.

5. The words, " He has signed one or two libels," are actionable, taken in connection with their alleged meaning. " Words charging that plaintiff had been in the penitentiary are actionable." *Smith* v. *Stewart*, 5 Barr. 372. An admission in writing by a party that he had been guilty of a libel is as conclusive evidence to a by-stander of the crime of libel, as a term in the penitentiary. " Whether words were spoken of a man in a certain *capacity*, is a question of fact for *the jury*." 1 Hilld. on Torts, 318 ; 12 Vt. 456. In the case at bar, the whole conversation is given, which is approved in *Cochran* v. *Cracraft* (16 Iowa, 303) ; and it is there held that but one cause of action arises on one conversation.

6. It is not necessary to declare in slander with the same certainty and definiteness as in an indictment, and therefore not necessary to negative the slanderous words, except a general allegation that the words are all false and malicious. *Miller* v. *Miller*, 8 Johns. 74 ; *Gibbs* v *Dewey*, 5 Cow. 503.

COLE, J.—The petition contains three counts in slander. The alleged slanderous words in the three different counts relate to the same subject-matter, but they are varied in each count,

1. SLANDER: pleadings: extrinsic facts: defamatory matter.

and the averments of the offense intended and understood by the hearers to be charged, are also varied so as to suit the language averred.

The second count is as follows: "And for other and second cause of such claim, plaintiff avers that afterward, on or about the 11th day of October, 1866, while plaintiff was, and for a long time had been, a farmer ·and citizen of said county, and a member of said Lutheran church, in good standing, the said defendant again contriving and intending to injure, degrade and ruin plaintiff in his business and among his neighbors, and the church to which he belonged, in a certain conversation had by defendant with certain good citizens of said county, and neighbors of the plaintiff, of and concerning the plaintiff, and of him in his aforesaid business, he the said defendant then falsely and maliciously uttered, spoke and declared of and concerning the plaintiff, as aforesaid, the following false, scandalous, ·slanderous, malicious and defamatory words, to wit: 'Come, go with me, and I will show you what sort of a man Thomas Swearingen is.' Defendant then conducted those persons with whom he was conversing, into defendant's place of business, and pointed out to them two small parcels of wheat of about two quarts each, one parcel of which was good and clean wheat, and the other parcel was poor and dirty wheat, and defendant then continued in these words: 'That good, clean wheat is the sample which Swearingen showed me, and sold me one thousand bushels, which he said he had, equally as good, but he did not have it, and did not deliver it; that poor dirty wheat is a fair sample of what he delivered; he demanded and got full pay for it. I am going to take those two parcels of wheat and put them in glass jars, and show them to every body. I will let every body see what kind of a man he is. I would not take one hundred dollars for those two samples of wheat. I

will show them to all his church friends and relatives, I will let them know how he cheats — this man who gets down on his knees and prays, — I call it cheating; if that is not cheating, I don't know what is. You would call it defrauding and cheating if you knew all about it.' And by said assertions defendant intended to be understood, and ·was understood to charge that plaintiff had defrauded and cheated defendant, designedly and by false pretenses, that he had been willfully dishonest in his dealing · as a farmer with the merchant who purchased his produce; that he had deceived, cheated and swindled the defendant, and was guilty of the offense of cheating, swindling and obtaining money by false pretenses, to the damage of the plaintiff in the sum of five thousand dollars."

To this count there was a demurrer specifying twenty causes. They may be summed up as follows: The words are not actionable *per se* and no special damage is alleged; the slanderous words are not negatived; the words charged do not impute a crime, and their meaning cannot be enlarged by innuendo; a farmer is not an artisan, and the words therefore do not relate to him in his profession or trade; the circumstances necessary to make the words actionable are not stated; the words are only an expression of opinion; the words are not susceptible of the meaning imputed to them by plaintiff; the meaning cannot be enlarged by innuendo so as to convey the meaning imputed by plaintiff, etc.

This demurrer was sustained by the District Court, and such ruling is now assigned for error.

At the common law, the petition would be vulnerable to some of the causes of demurrer alleged against it. Under our statute, Revision, section 2928, it is not necessary to state in a petition for slander or libel, any extrinsic facts showing the application of the defamatory matter

·to the plaintiff. It is enough to allege that it was spoken of and concerning him.

Nor is it necessary to state any extrinsic facts showing that the words charged were used in a defamatory sense; 2. —— defamatory sense. *" but it shall be sufficient generally to state that the words or matter were used in a defamatory sense, specifying such defamatory sense, and where the words or matter set forth, with or without the alleged meaning, show a cause of action, it shall be suf-. ficient."*

This count of the petition does aver the words to have been spoken of and concerning the plaintiff; that they were false, and that they were intended to be, and were, understood as charging the plaintiff with a crime. This, as a matter of pleading, is sufficient, and it was error to sustain the demurrer. Each count of the petition contains the like essential averments, and they are each good and sufficient. See the provisions of our statute referred to and discussed at length by WRIGHT, Ch. J., in *Kenyon* v. *Palmer*, 18 Iowa, 377.

The third count, with the aid of the averments as to the defamatory sense, as specified in the statute, certainly 3. —— words actionable *per se:* pleading. contained words actionable *per se.* The further averments as to damage to plaintiff as a citizen, as a farmer, and as a church member, did not justify the action of the court in requiring a more specific statement as to the particular items of damage in each capacity or relation. Being actionable *per se*, as averred in the petition, the plaintiff had a right to rely upon the damage implied by the law, or to be inferred by the jury, from the words used and their actionable sense, and he is not required to aver or prove any facts showing special damage. Rev. § 2928 ; 2 Starkie on Slander, p. 66.

Reversed.